# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9310 | **DATE** | 5/10/2004 |
| **CASE TITLE** | | Santos vs. Boeing | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, the Court hereby grants defendant's motion to dismiss Count VII of the plaintiff's second amended complaint. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAY 1 1 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 69 |
| | Copy to judge/magistrate judge. | | | |
| | MW | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MICHAEL SANTOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 9310 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
MAY 1 1 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant The Boeing Company's ("Boeing") motion to dismiss Count VII of the second amended complaint. For the reasons stated below, we grant the motion to dismiss.

## BACKGROUND

Plaintiff Michael Santos ("Santos") worked for Boeing as a Mailroom Specialist in its Chicago, Illinois office between September 17, 2001, and October 21, 2002. Steve Richards ("Richards") was the direct supervisor for Santos and one of Santos' co-workers was Bob Delilio ("Delilio"). Santos alleges that Richards and

1

Delilio made numerous comments regarding his racial and national origin. Santos complained about the comments to Boeing supervisors and Santos claims that Boeing retaliated against Santos by demoting him from the lead mailroom position and taking away his office. Santos also claims that Boeing ultimately terminated him because of his race and national origin.

In addition, Santos claims that Boeing failed to protect its employees, including Santos, from the alleged fits of rage by Delilio at work. Santos claims that Delilio threw items across the mailroom, kicked furniture, and screamed and shouted at Santos and other co-workers. Santos claims that he informed Richards that he feared for his physical safety around Delilio, but Richards ignored Santos's complaints. In December of 2001 Santos complained about Delilio's alleged tantrums to Dave Komendat ("Komendat"), Boeing's Director of Security. Santos claims that Komendat assured Santos that he would investigate the matter, but that Boeing did not conduct any investigation. Around January 15, 2002 Santos once again reported Delilio's conduct after Delilio became enraged and began yelling at Santos. Santos claims that Delilio received a telephone call, apparently regarding Santos' complaint, and after Delilio hung up the telephone, he yelled at Santos and turned and allegedly grabbed for a box cutter. Santos claims that he feared that Delilio would use the knife to harm him and ran out of the mailroom.

Santos' second amended complaint contains a hostile work environment claim alleging violations of 42 U.S.C § 2000e *et seq.* ("Title VII") (Count I), a race

discrimination claim alleging violations of 42 U.S.C. § 1981 ("Section 1981")(Count II), Title VII retaliation claims (Counts III, IX, and X), Section 1981 retaliation claims (Counts IV and V), a Fair Labor Standards Act claim, 29 U.S.C. § 201 *et seq.* (Count VI), a negligent retention claim (Count VII), and a Title VII race and national origin claim (Count VIII). Boeing's motion to dismiss is solely limited to the negligent retention claim (Count VII).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12 (b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir.1993)). This court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir.1993)). However, the burden of proof in a Rule 12 (b)(1) motion lies with "the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

# DISCUSSION

Boeing argues that we should dismiss the negligent retention claim (Count VII) because: 1) the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, preempts Santos' negligent retention claim, and 2) the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*, bars Santos' negligent retention claim.

## I. Illinois Human Rights Act Preemption

Boeing argues that the IHRA preempts Santos' negligent retention count. The IHRA provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). Under the IHRA, it is unlawful to discriminate against an individual " because of his or her race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, military status, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." 775 ILCS 5/1-102. The Illinois Supreme Court has determined that the IHRA prohibits employer liability for state common law claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23

4

(Ill.1997). Thus, a plaintiff may proceed with a common law tort claim only if he alleges the elements of that claim without relying on the "legal duties created by the Illinois Human Rights Act." *Id.* at 24. If an Illinois court lacks jurisdiction over the state claim, "so too does a federal court sitting in Illinois." *Arnold v. Janssen Pharmaceutical, Inc.*, 215 F.Supp.2d 951, 955 (N.D. Ill. 2002).

Boeing argues the IHRA preempts Santos' negligent retention claim because Santos alleges the same facts in his negligent retention Count that he alleges in the Counts that contain Title VII claims. However, "mere factual overlap is not decisive." *Id.* at 955. As stated above, preemption is contingent on whether "a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act."*Maksimovic*, 687 N.E.2d at 24.

Boeing relies on *Wington v. Ellis*, 2003 WL 21037874 (N.D. Ill), contending that a common law claim is inextricably linked to a civil rights claim when the plaintiff repeats and realleges the allegations forming the civil rights count. However, *Wington* is distinguishable because the plaintiff in that case supported her intentional infliction of emotional distress claim solely on the duty to protect employees from sexual harassment, repeating and realleging all of the allegations that were contained in her Title VII count. *Id.* at *5. In contrast, Santos' negligent retention claim is distinct from his civil rights claims relying on the duty to protect employees from assault by co-workers rather than protection from civil rights violations.

5

In his negligent retention Count Santos alleges that Delilio suffered from fits of rage in which he would throw items across the mailroom, kick furniture, and scream and shout at Santos and his co-workers. (SA Compl. Par. 73). Santos further alleges that Boeing knew about these incidents and did not investigate or resolve the problem, which led to Plaintiff's injury. (SA Compl. Par. 83, 91-92). These allegations are never alleged in Santos' Title VII Counts. Although Santos' negligent retention Count includes allegations that support Santos' Title VII claim, these allegations are not necessary to establish the elements of negligent retention. Santos has sufficiently shown that his negligent retention claim based on a duty other than one created by the IHRA. *See Ishkhanian v. Forrester Clinic S.C.,* 2003 WL 21479072, at *4 (N.D. Ill. 2003)(holding that plaintiff's "claim for negligent retention d[id] not rely entirely on rights established by the IHRA, but is instead predicated on an independent common law duty to protect an employee from assault and battery. . . [and] [e]ven though the assault and battery might also be part of a claim of sexual harassment, the claim has a foundation separate from the IHRA and thus is not preempted."). Thus, we find the IHRA does not preempt Santos' negligent retention claim. We note that Boeing also attempts to argue in its reply that Santos has not pleaded all of the elements for the negligent retention claim. However, although it the negligent retention claim is a state common law claim, the federal pleading standard applies to pleadings before federal court and under such a standard a plaintiff is not required to plead all of the elements of a cause of action.

*Head v. Chicago School Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000).

II. Illinois Workers' Compensation Act Bar

Boeing argues the IWCA's exclusivity provision bars Santos' negligent retention claim. 820 ILCS 305/5(a), 305/11. The IWCA's exclusivity provision bars employees from bringing any common law or statutory claims for accidental injuries "while engaged in the line of his duty as such an employee." 820 ILCS 305/5(a), 305/11; *Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997); *Simmons v. Chicago Public Library*, 860 F.Supp. 490, at *493 (N.D.Ill. 1994). The IWCA's exclusivity provision bars state common law suits based upon negligence. *See Arnold*, 215 F.Supp.2d at 957; *Walker v. Doctors Hospital of Hyde Park*, 110 F.Supp. 2d 704, 714 (N.D.Ill. 2000) (holding the "IWCA abrogates employer liability for all common law negligence claims, including negligent retention claims"); *Small v. Chicago Health Clubs, Inc.*, 843 F.Supp. 398, 403 (N.D.Ill.1994) (holding that the intention of the IWCA was to bar all common law negligence claims); *Simmons v. Chicago Public Library*, 860 F.Supp. 490, 493-94 (N.D. Ill. 1994)(holding the IWCA bars a claim of negligent retention); *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222,1229-30 (Ill. 1990)(stating that IWCA bars negligence tort claims).

However, the IWCA does not bar claims based upon certain torts. *Meerbrey*, 564 N.E.2d at 1229-30. The IWCA exclusivity provisions does "not bar a common

7

law cause of action against an employer . . for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Id.* A plaintiff may escape the IWCA exclusivity provision bar for claims, by showing "(1) the injury was not accidental; (2) the injury did not arise from [] employment; (3) the injury was not received during the course of [] employment; [or] (4) the injury is not compensable under the Act." *Hunt-Golliday*, 104 F.3d at 1016. *See also Walker v. Doctors Hosp. of Hyde Park*, 110 F.Supp.2d 704, 714 (N.D. Ill. 2000)(explaining that "if the employer, or its alter ego, acts with a *specific intent* to injure the employee through the acts of the employee's coworkers, the injury that results no longer remains an accident.")(emphasis added).

Santos' argues that Boeing intentionally retained Delilio and that the injury was thus not accidental and the tort is an intentional tort. However, Illinois does not recognize an intentional retention tort claim. *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 958 (N.D.Ill. 2002)(stating that there is "no such thing as intentionally wrongful retention, training, or supervision."). Even if Illinois did recognize such a claim, Santos has not alleged such a claim. Santos chose to proceed under a theory of negligence stating that Boeing "is liable under Illinois law for negligently retaining employee Bob Delilio." (SA Compl. 70). The allegations in the negligent retention count (Count VII) also indicate negligence rather than intentional wrongdoing by Boeing. For instance, Santos alleges that Boeing "was

aware that Delilio had a propensity to assault and cause harm to his co-workers."
(SA Compl. 90). Another example is an allegation that "Richards ignored Santos'
initial complaint about Delilio." (SA Compl. 76). Such alleged actions are clearly
only negligent conduct. Santos does not allege that Boeing committed an
intentional tort or that Delilio was the alter ego of Boeing or was commanded to
perform the alleged misconduct by Boeing or that he was authorized to do so by
Boeing.

Santos cites *Cline v. General Electric Capital Auto Lease, Inc.*, 757 F.Supp.
923, 931 (N.D. Ill. 1991) and *Thomas v. Habitat Co.*, 213 F.Supp.2d 887, 892 (N.D.
Ill. 2002) in which the courts held that it is possible that an employer's knowledge of
an employee's potential misconduct that could harm other employees combined with
inaction by the employer could constitute ratification by the employer of the
miscreant employee's intentional misconduct. However, in both of those cases cited
by Santos the employees that engaged in the alleged wrongful conduct harming other
employees were supervisors. *Thomas*, 213 F.Supp.2d at 892; *Cline*, 757 F.Supp. at
931. Those cases are therefore distinguishable from the instant case in which Delilio
is merely a co-worker of Santos. Ratification can be more readily found and the
miscreant employee can more readily be found to be the alter ego of his employer
when the miscreant employee acted with supervisory authority given to him or her
by the employer. *See e.g. Walker*, 110 F.Supp.2d at 715(indicating that not even a
"low-level supervisory employee" is typically found to be "the employer's alter

9

ego."); *Arnold*, 215 F.Supp.2d at *957(stating that "[a]lthough mere supervisory status is insufficient, a co-employee qualifies as an 'alter ego' for purposes of the IWCA if the co-employee, 'in a practical sense, speaks for the company.'")(quoting *Crissman v. Healthco Int'l, Inc.*, 1992 WL 223820, at *7 (N.D. Ill. 1992)).

If an employer knows, based upon past conduct by an employee, that the employee has a propensity for a certain type of misconduct, and the employer allows the employee to continue to work and does not make reasonable efforts to prevent future harms to other employees, then the employer is negligent. The employee's intentional misconduct does not make the employer's lack of action intentional wrongdoing. The employer simply allowed the employee to proceed unchecked and the propensity of the miscreant employee made potential harm to co-workers a likely possibility. That is the essence of a negligence claim. There is a sufficient risk, the employer has a duty to the other employees, but ignores the risk to them, and there is a breach of that duty resulting in damages. Such conduct is not intentional in any way shape or form. This conduct is analogous to leaving a dangerous animal in the proximity of persons that you owe a duty to. *See Walker*, 110 F.Supp.2d at 714(stating when determining that the claim against the employer was preempted by the IWCA that "specific intent" is required by an employer and also stating: "[the plaintiff] argues only that Ms. Honeysucker knew of Mr. Passett's racist tendencies. However, there is absolutely no evidence on the record that [defendant] Doctors Hospital or Ms. Honeysucker had in any way authorized, directed, encouraged, or

10

commanded Mr. Passett's alleged behavior.").

In *Thomas*, which is cited by Santos, the court held that knowledge by management combined with "lack of follow-up action is equivalent to express authorization of injurious conduct." 213 F.Supp.2d 887, 892 (N.D. Ill. 2002)(quoting *Quela v. Payco-general Am. Credits, Inc.*, 84 F.Supp.2d 956, 960 (N.D. 2000). As indicated above, this ratification argument may be more true if the miscreant employee has some sort of supervisory authority. However, to the extent that *Cline* seeks to apply such a rule to all co-worker misconduct we cannot agree. An employer could possibly engage in intentional wrongdoing, if for example, the employer kept the miscreant employee in the position or placed the employee in the position and did nothing to curb the miscreant employee's propensities, while intending that the miscreant employee cause harm other employees. Perhaps, for example, an employer wants to get rid of an employee and it puts a dangerous or menacing employee in an area to scare the other employee into quitting. There are no allegations of such conduct in this case.

An employer could possibly ratify the conduct of the miscreant employee if, for example, the miscreant employee engaged in wrongful conduct harming a co-worker and the employer indicated satisfaction with the result and indicated that the miscreant employee had unknowingly served the employer's intended purpose. That was the situation in the *Cline* case, which is cited by Santos and is heavily relied upon by other cases cited by Santos. In the *Cline* case the court, in finding that the

11

alleged employer wrongdoing was intentional, noted that the defendant employer tolerated the supervisor's misconduct because the department "performed so well" and thus the employer was benefitting from the misconduct. *Cline*, 757 F.Supp. at 931. There is no such allegation in the instant case. Delilio was not a supervisor and there is not allegation that Boeing benefitted from his anger around his co-workers. Thus, for several reasons *Cline* is clearly not applicable in the instant case.

Santos also cites *Reynolds v. Hitachi Seiki U.S.A., Inc.*, 1993 WL 384535, at *3 (N.D. Ill. 1993) and *Mobley v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 728 (N.D.Ill. 1993) for the proposition that an employer's knowledge and inaction can become ratification. However, the courts in *Reynolds* and in *Mobley*, in finding ratification, cite solely to *Cline* which as indicated above in distinguishable from the instant action. 1993 WL 384535, at *3; 864 F.Supp. at 728. Also, unlike the instant case, in both the cases the alleged miscreant employees were supervisors of the plaintiffs. 1993 WL 384535, at *1; 864 F.Supp. at 728. In *Mobley* the court noted that some of the alleged miscreant employees were "management-level employees" and "constituted alter-egos" of the defendant employer. 864 F.Supp. at 729. Since the miscreant employees in *Reynolds* and in *Mobley* were supervisors alter ego arguments and ratification arguments were more palatable arguments.

Santos also cites *Quela v. Payco-General American Credits, Inc.*, 84 F.Supp.2d 956, 960 (N.D.Ill. 2000) for the proposition that an employer's knowledge and inaction can become ratification. However, in making such a finding

the court in *Quela* cites to *Cline* and *Mobley* which as indicated above are distinguishable from the instant case. *Id.* Also, unlike in the instant case, in *Quela* the miscreant employee was the supervisor of the plaintiff. *Id.*

We note that our position on the ratification and alter ego issues, that an employer's inaction, in the face of knowledge of the menacing propensities of an employee, is preempted by the IWCA, is consistent with the language used in the Illinois Supreme Court case *Meerbrey v. Marshall Field and Co., Inc.,* 564 N.E.2d 1222, 1229-30 (Ill. 1990). As stated above the court in *Meerbrey* stated that he IWCA exclusivity provisions does "not bar a common law cause of action against an employer . . . for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or *expressly authorized* by the employer." *Id.* (emphasis added). The words "expressly authorized" do not suggest that the Court intended the exception to be extended to include situations where there is an implied ratification based upon inaction by the employer.

Our position on the ratification and alter ego issues is also consistent with the case law, that is not disputed by Santos, that holds that claims based upon negligence are preempted by the IWCA. *See e.g. Id.*; *Simmons*, 860 F.Supp. at 493-94. Although the IWCA makes reference to covering "accidental injuries," 820 ILCS 305/11, the recognition by the courts that negligent conduct causing injuries falls within the scope of "accidental injuries" that are preempted by the IWCA clearly shows that the phrase is not intended to mean accidental injuries that occur without

13

the fault of the employer. *See Walker*, 110 F.Supp.2d at 714(indicating when deciding whether the IWCA preempted a claim that "if the employer, or its alter ego, acts with a *specific intent* to injure the employee through the acts of the employee's coworkers, the injury that results no longer remains an accident.")(emphasis added).

Our position on the ratification and alter ego issues is also consistent with other caselaw in the Northern District as well. *See Fortenberry v. United Air Lines*, 1997 WL 457499, at *5 (N.D. Ill. 1997)(holding that the defendant employer could not "be said to have specifically commanded or expressly authorized the intentional torts of co-workers simply because it knew or should have known that [the supervisor] was harassing [the plaintiff.]"); *Simmons v. Chicago Public Library*, 860 F.Supp. 490, 493-94 (N.D. Ill. 1994)(holding the IWCA bars a claim of negligent retention); *Al-Dabbagh v. Greenpeace, Inc.*, 873 F.Supp. 1105, 1112 (N.D. Ill. 1994)(indicating when determining whether a claim was preempted by IWCA that "[t]o state a claim against an employer for authorizing the injurious conduct of a co-worker, an employee must assert that the *employer* possessed a *specific intent to inflict injury on the employee.*")(emphasis added).

Santos alleges that Boeing knew that Delilio had a propensity to act inappropriately when angry and was a risk to co-workers and that Boeing did not take steps to protect other employees. Boeing's alleged misconduct is, at best, an allegation of negligence and thus the negligent retention claim is barred by the IWCA.

14

## CONCLUSION

Based on the foregoing analysis, we grant Boeing's motion to dismiss Santos' negligent retention claim (Count VII) in the second amended complaint.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 10, 2004